UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. __ |
| | § | |
| $126,329 SEIZED FROM VERITEX | § | |
| BANK ACCOUNT x2089, | § | |
| | § | |
| $400,000 SEIZED FROM TD | § | |
| AMERITRADE ACCOUNT x3756, | § | |
| | § | |
| $300,000 SEIZED FROM TD | § | |
| AMERITRADE ACCOUNT x0827, | § | |
| Defendants. | § | |

**VERIFIED COMPLAINT FOR CIVIL FORFEITURE
IN REM AND NOTICE TO POTENTIAL CLAIMANTS**

The United States of America, Plaintiff, files this civil action for forfeiture in rem against $126,329, $400,000, and $300,000 seized from financial accounts.   The United States alleges on information and belief as follows:

**JURISDICTION AND VENUE**

1.     This Court has jurisdiction in this case pursuant to 28 U.S.C. §§ 1345 and 1355.

2.     A substantial part of the acts and omissions giving rise to the forfeiture occurred in the Southern District of Texas.   Venue is proper in this Court pursuant to 28 U.S.C. §§ 1355, 1391(b) and 1395(a).

## THE DEFENDANT PROPERTIES

3.     The First Defendant Property is $126,329 seized from a Veritex Community Bank account held in the name of Medley Compounding Pharmacy, LLC, with an account number ending in 2089 ("Account x2089").

4.     The Second Defendant Property is $400,000 seized in a TD Ameritrade investment account held in the name of Pearl Affordable Family Limited Partnership, with an account number ending in 3756 ("Account x3756").

5.     The Third Defendant Property is $300,000 seized in a TD Ameritrade investment account held in the name of a trust, with an account number ending in 0827 ("Account x0827").

6.     The United States alleges that Medley Compounding Pharmacy fraudulently billed for compounded medications that were medically unnecessary or prescribed as a result of illegal kickbacks, or both; that health care fraud proceeds were deposited into financial accounts; and that money laundering occurred in violation of Sections 1956 and 1957.   The United States seeks forfeiture of the First, Second, and Third Defendant Properties (collectively, "the Defendant Properties").

## STATUTORY BASIS FOR FORFEITURE

7.     This is a civil action in rem brought to enforce the provisions of Title 18, United States Code, Sections 981(a)(1)(A) and 981(a)(1)(C).   The United States

alleges that the Defendant Properties are subject to forfeiture as the proceeds of federal health care fraud; and that the Second and Third Defendant Properties are subject to forfeiture as property involved in, or traceable to, money laundering.

8.      Section 981(a)(1)(C) provides for the forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in [18 U.S.C.] section 1956(c)(7) of this title), or a conspiracy to commit such offense."   In addition, Section 984 provides that the amount of fungible forfeitable funds deposited into a specific account within the last twelve months can be forfeited so long as the action is commenced within one year.

9.      Pursuant to 18 U.S.C. § 24(a), violations of 18 U.S.C. § 1347 (health care fraud) and 42 U.S.C. § 1320a-7b(b) (payment and receipt of kickbacks) constitute federal health care fraud; and pursuant to 18 U.S.C. § 1956(c)(7)(F), a federal health care fraud offense, including conspiracy pursuant to Section 1349, is "specified unlawful activity."

10.     A financial transaction conducted with the proceeds of specified unlawful activity, knowing that the transaction is designed in whole or in part "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity," constitutes money laundering in

3

violation of 18 U.S.C. § 1956(a)(1)(B)(i).   Conducting a financial transaction involving more than $10,000 in proceeds of specified unlawful activity constitutes money laundering in violation of 18 U.S.C. § 1957.

11.     Section 981(a)(1)(A) provides for the forfeiture of "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property."

## RELEVANT ENTITIES AND INDIVIDUALS

12.     Medley Compounding Pharmacy, Inc. ("Medley") is a pharmacy located in Bellaire, Texas, that provides Compounded Drugs.

13.     Medley was enrolled with DOL-OWCP.   Pursuant to the instructions on the enrollment forms submitted by Medley, DOL-OWCP electronically deposited payments for Medley's claims for Compounded Drugs and other medicines into its Account x2089.

14.     Shobha Aggarwal is an authorized signatory for Medley's Account x2089.   She is also a Member and Director of Medley, according to Texas Secretary of State records.   Shobha Aggarwal is also known as Shobha Gupta.

15.     A daughter of Shobha Aggarwal is listed as the President and Director of AB Health Consulting LLC ("AB Health"), according to records of the Texas Secretary of State.  AB Health has a bank account at Veritex Community Bank,

4

with an account number ending in 2030, and Shobha Aggarwal is a signatory on that account.

16.     Shobha Aggarwal is the President of South Texas Surgery Medical Center Inc., according to records of the Texas Secretary of State.   There is a bank account at BBVA with an account number ending in 9573, held in the name of Texas Surgery Medical Center Inc. ("Medical Center").   Shobha Aggarwal is a signatory, under the name Shobha Gupta.

17.     Dr. Ajay Aggarwal ("Dr. Aggarwal") is a physician licensed in the State of Texas, and he is enrolled in the DOL-OWCP program.

18.     Dr. Aggarwal is married to Shobha Aggarwal.

## FECA AND COMPOUNDED DRUGS

19.     The Federal Employee's Compensation Act ("FECA") provides for payment of workers' compensation benefits to federal employees who suffer an injury, disease or death in the performance of duty.   FECA provides coverage for pharmaceuticals prescribed by a doctor and medically necessary to treat symptoms which are the result of a federal employee's work-related injury.   The Department of Labor Office of Workers Compensation Program ("DOL-OWCP") administers benefits under FECA.

20.     FECA is a health care benefit program as defined in Title 18, U.S.C.,

Section 24(b), and it affects interstate commerce.   FECA is also a "Federal health care program" as defined by 42 U.S.C. § 1320 a-7b.   FECA covers Compounded Drugs when medically necessary for the beneficiary.

21.   Compounded Drugs are not approved by the United States Food and Drug Administration ("FDA"), so the FDA does not verify their safety, potency, effectiveness or manufacturing quality.   Compounded Drugs may be prescribed by a physician when an FDA-approved drug does not meet the health needs of a particular patient.   At a general level, producing Compounded Drugs is a practice whereby a licensed practitioner combines, mixes or alters the ingredients of a drug or multiple drugs to create a drug tailored to meet the medical needs of an individual patient.   For example, a patient may have an allergy to an ingredient of an FDA-approved drug, or the patient may not be able to take the FDA-approved drug because he has a medical condition that prevents him from swallowing a pill, but he can take the medicine in the form of a liquid.

## HEALTH CARE FRAUD AND MONEY LAUNDERING

22.   As part of the conspiracy and scheme to commit health care fraud, injured federal employees would be seen and treated by Physician 1, who would refer patients to Dr. Aggarwal and sometimes send prescriptions to Medley himself. Dr. Aggarwal caused the payment of illegal kickbacks to Physician 1.

6

23.     Also as part of the conspiracy and scheme to commit health care fraud. Dr. Aggarwal and Physician 1 would prescribe federal employees Compounded Drugs that were not medically necessary, or that were induced by the payment of illegal kickbacks, or both.   They would send the prescriptions for Compounded Drugs to be filled at Medley.   Medley would fraudulently bill DOL-OWCP for the Compounded Drugs, and DOL-OWCP would make payments into Medley's Account x2089.

24.     From on or about October 6, 2016, to on or about March 19, 2020, Medley Compounding Pharmacy submitted approximately 2,089 claims for reimbursement to DOL-OWCP or prescriptions for Compounded Drugs and other medications that were submitted by Dr. Aggarwal alone.   Medley billed DOL-OWCP for these claims and was paid approximately $3,700,000.

25.     The United States alleges that money laundering occurred when funds were transferred from Medley's Account x2089 to other bank accounts, including but not limited to AB Health.   The funds from DOL-OWCP payments would be routed to various bank accounts in order to conceal and disguise the nature, the location, the source, the ownership, or the control of the health care fraud proceeds, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

26.     Medley paid kickbacks, both directly and indirectly, to doctors who

prescribed Compounded Drugs to FECA beneficiaries.

27.    The United States alleges that there were financial transfers of health care fraud proceeds from Medley's Account x2089 to AB Health's bank account x2030, and to the Medical Center's bank account x9573; and that there were subsequent financial transfers of more than $10,000 in health care proceeds to accounts at TD Ameritrade, all in violation of 18 U.S.C. § 1957.

## TRACING OF FRAUD PROCEEDS

28.    DOL-OWCP made payments for Compounded Drugs and other medications to Medley's Account x2089. The Medley account made further transfers to AB Health's bank account and to the Medical Center's bank account. Shobha Aggarwal, a/k/a Shobha Gupta, is an authorized signatory on all three bank accounts.

29.    The Aggarwal family set up multiple accounts at TD Ameritrade, which are held in company names, individual family member names, and trusts.   Some of the funds invested in the TD Ameritrade accounts originated from the Medley bank account and were transferred through various financial accounts in an effort to conceal or disguise the health care fraud proceeds in violation of Section 1956; and the $400,000 and $300,000 transfers described below were also Section 1957 violations.

A. Medley Bank Account x2089

30.     As a result of the fraudulent billing, DOL-OWCP made payments directly to Medley's Account x2089 at Veritex Community Bank.   The payments made by DOL-OWCP are subject to forfeiture as the proceeds of health care fraud.

31.     The United States alleges that the First Defendant Property, the $126,329 seized from Medley's Account x2089, is subject to forfeiture as the proceeds of health care fraud, whether directly or through application of Section 984.

B. TD Ameritrade Account x3756

32.     There is a TD Ameritrade investment account held in the name of Pearl Affordable Family Limited Partnership, with an account number ending in 3756. The account lists Dr. Aggarwal and Shobha Aggarwal as authorized agents.

33.     On or about November 3, 2017, there was a financial transfer of $400,000 from the AB Health's Account x2030 to TD Ameritrade Account x3756. A financial analysis of AB Health account x2030 shows that more than $10,000 of the $400,000 transfer is traceable to funds from Medley's Account x2089.

34.     The United States alleges that the $400,000 transfer was a money laundering transaction involving more than $10,000 in proceeds of specified unlawful activity, in violation of Section 1957.

35.     The United States also alleges that the financial transactions from the

Medley account to AB Health's Account x2030 to the Pearl Affordable account were designed, in whole or in part, to conceal or disguise the nature, the location, the source, the ownership, or the control of the fraud proceeds, in violation of Section 1956(a)(1)(B)(i).

36.     Therefore, the Second Defendant Property, the $400,000 invested in the Pearl Affordable account on or about November 3, 2017, is subject to forfeiture as property involved in money laundering.

    C.   TD Ameritrade Account x0827

37.     There is a TD Ameritrade investment account held in the name of a trust for a daughter of the Aggarwals, with an account number ending in 0827. Financial statements for the trust are addressed to Dr. Aggarwal.

38.     On or about August 15, 2018, there was a financial transfer of $300,000 from Medical Center's account x9573 to TD Ameritrade Account x0827.   A financial analysis of Medical Center's account x9573 shows that more than $10,000 of the $300,000 transfer is traceable to funds from Medley's Account x2089.

39.     The United States alleges that the $300,000 transfer was a money laundering transaction involving more than $10,000 in proceeds of specified unlawful activity, in violation of Section 1957.

40.     The United States also alleges that the financial transactions from the

Medley account to the Medical Center account to the TD Ameritrade trust account were designed, in whole or in part, to conceal or disguise the nature, the location, the source, the ownership, or the control of the fraud proceeds, in violation of Section 1956(a)(1)(B)(i).

41.    Therefore, the Third Defendant Property, the $300,000 invested in the TD Ameritrade Account x0827 on or about August 15, 2018, is subject to forfeiture as property involved in money laundering.

## CONCLUSION

42.    DOL-OWCP payments to Medley Compounding Pharmacy for fraudulent billings are subject to forfeiture as property constituting or is derived from criminal proceeds, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 984, whether the funds are found in the Medley bank account or, in part, in the TD Ameritrade accounts. Property involved in money laundering, including violations of Sections 1956(a)(1)(B)(i) and 1957, is likewise subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).   Therefore, the United States seeks forfeiture of the three Defendant Properties.

## NOTICE TO ANY POTENTIAL CLAIMANT

YOU ARE HEREBY NOTIFIED that if you assert an interest in the property subject to forfeiture and want to contest the forfeiture, you must file a verified claim which fulfills the requirements set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.   The verified claim must be filed no later than 35 days from the date this Complaint was sent to you in accordance with Rule G(4)(b); or, if this Complaint was not sent to you, no later than 60 days after the first day of publication of notice on an official internet government forfeiture site, in accordance with Rule G(5)(a)(ii)(B).

An answer or a motion under FED.R.CIV.P. 12 must be filed no later than 21 days after filing the claim.   The claim and answer must be filed with the United States District Clerk for the Southern District of Texas, and a copy must be served upon the undersigned Assistant United States Attorney at the address provided in this Complaint.

The United States will serve notice, along with a copy of this civil Complaint, on the account holder and on any persons who reasonably appear to be potential claimants.

## RELIEF REQUESTED

The United States seeks a final judgment forfeiting the Defendant Properties

to the United States and requests any other relief to which the United States may be

entitled.

Respectfully submitted,

RYAN K. PATRICK
United States Attorney

By:   /s/ Kristine E. Rollinson
Kristine E. Rollinson
SDTX Federal No. 16785
Texas State Bar No. 00788314
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
Phone 713-567-9000

## VERIFICATION

I, Adam Watson, Special Agent with the United States Postal Service, Office of Inspector General, declare under the penalty of perjury, as provided by 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint for Civil Forfeiture In Rem and Notice to Potential Claimants, and that the facts stated in paragraphs 3 - 6 and 12 - 42 of the Complaint are based upon my personal knowledge, upon information obtained from other law enforcement personnel, or upon information I obtained in the course of my investigation.   Those facts are true and correct to the best of my knowledge and belief.

Adam Watson, Special Agent
United States Postal Service
Office of Inspector General